Good morning, Your Honors. Stephen Smerek appearing on behalf of Appellant Louis Vuitton. I'd like to reserve two minutes, if I could, for rebuttal. Sure. The issue before the Court today is whether the District Court erred in sua sponte, remanding the present action, based on its conclusion that Louis Vuitton had failed to satisfy the jurisdictional amount in controversy under the Class Action Fairness Act of $5 million. I think at the outset of the case, it's important to understand that the undisputed facts in the record before the Court, under any interpretation of the underlying statute or the civil damages that are available under that statute, Louis Vuitton has established the amount in controversy substantially exceeds $5 million, and in fact, federal jurisdiction is proper under the Class Action Fairness Act. The issue then is whether the District Court erred in finding that the notice of removal was defective in ordering the case remanded. The problem with the District Court's order is that it ignored the plaintiff's allegations, and it also sua sponte construed the California statute at issue, California Civil Code Section 1747.08, in a manner that was adverse to plaintiff's allegations. And it did so, the Court made that construction without offering the parties any opportunity to brief the issue or be heard on the issue. In its order specifically, the District Court conducted its own independent analysis, apparently, and interpreted Section 1747 to limit the damages that plaintiff could recover to $250 for the initial violation, and to limit the damages to $250 for each subsequent violation, except and unless the plaintiff or the individual members of the plaintiff class could prove multiple violations of the statute. And in so ruling, the District Court erred because the plaintiff's complaint specifically alleges that plaintiff and the class were entitled to damages up to $1,000 per violation. And the error is further demonstrated because this question, the proper interpretation of this civil damages provision under California state law, has not been resolved. There are no California state court cases that interpret the provision in the manner that it was applied in the District Court. And in fact, to the contrary, the District Courts in the Ninth Circuit that have reviewed this have allowed cases to be removed based on the same jurisdictional allegations, premised on the plaintiff's allegations in those cases on the legal theory that the award can be up to $1,000 for each subsequent violation as set forth in the statute. Now, turning to the allegations in the present complaint, plaintiff alleges that Louis Vuitton utilizes an information capture policy. Plaintiff alleges that pursuant to that policy, Louis Vuitton captures personal identifying information regarding customers who shopped with credit cards in violation of 1747. Has Louis Vuitton stopped doing that now? Louis Vuitton has a capture information policy. It does not believe that it violates the statute. Whether or not it does, the amount in controversy is based on the allegations at this point in the proceedings. It's curious because the statute, the statute itself has been, yeah. It has been around. And Louis Vuitton is aware of the statute. It hasn't addressed its policies such that it believes they are in full compliance with state law. In paragraph 32 of the complaint, Ms. Morey expressly alleges that Louis Vuitton engages in this allegedly unlawful conduct in connection with every credit card transaction in every one of its retail locations, and expressly alleges the $1,000 in controversy. In the notice of removal, Louis Vuitton set forth in the notice itself and in a declaration from the company in support that there were substantially in excess of 5,000 transactions processed in California retail locations during the one-year period in question. And therefore, assuming the allegations in the complaint as true, and based on the good-faith legal theory presented by plaintiffs in the complaint, those 5,000-plus, substantially in excess of 5,000 transactions, demonstrate that the amount in controversy exceeds the $5 million jurisdictional threshold. And I think here it's important to recognize, as the Ninth Circuit did in Lewis v. Verizon Communications, that the amount in controversy does not require the person seeking jurisdiction to demonstrate that the award will in fact be for more than the jurisdictional amount, but rather it is an estimate of the amount that is actually put in dispute by plaintiff's claims. And here, as in the Lewis case, based on the affidavit that was presented with the notice of removal, Louis Vuitton demonstrated that, assuming the allegations in plaintiff's complaint were true, which the Court must do at this stage in the proceedings, the amount in controversy was satisfied. I would also like to say quickly that the Court erred in refusing to consider the motion for reconsideration based on the undisputed facts that the number of transactions, in fact, far exceeded 200,000 during the relevant period in question. And in connection with notwithstanding those undisputed facts, the Court refused to consider them, and we believe that that runs afoul of the Ninth Circuit's principle as outlined in Barrow Development Company. In Barrow Development Company, the Ninth Circuit recognized that 28 U.S.C. section 1653 expressly authorizes defective jurisdictional allegations previously made in a notice of removal to be corrected at any time, any time in the lower court, and specifically by statute any time in the appellate court, in this court. And, in fact, in Barrow, what happened is defendant had done a removal. It was on a diversity jurisdiction removal. And the Ninth Circuit found that the allegations of citizenship, of corporate citizenship, were defective. And notwithstanding the fact that the Court found that the notice of removal was defective, it ruled that the defect was technical in nature and could be cured by an amendment even at the appellate stage, that, and in so ruling, it relied on 28 U.S.C. 1653. The Ninth Circuit specifically said that while there was many cases that said that removal statute should be strictly construed against removal, nonetheless the Ninth Circuit found that the better principle to apply in that context was that form should not win out over substance. And it specifically addressed the merits. And that's consistent with the Sixth Circuit decision pointed out in the brief, and Gafford, the Sixth Circuit adopted the same policy. Thank you very much. We've got about a minute and a half left. Thank you. Good morning, Your Honor. Good morning. Hang on one second. Thank you. Good morning. Gene Stonebarger. I'm the plaintiff and appellate lead. Good morning. Good morning. California Civil Code Section 1747.08 prohibits the requesting and recording of personal identification information in conjunction with a credit card transaction. The California Supreme Court has interpreted the statute in both Linder v. Thrifty Oil and recently this year in Pineda v. Williams-Sonoma, Inc. to find that pursuant to subsection E, that the statute provides an entire range of civil penalties that are mandatory, but nonetheless the amount is subject to discretion. Well, are you seeking 5 million plus in this case? Your prayer seems to say that. Your Honor, the prayer is that we're seeking the appropriate civil penalty, and within the complaint we've alleged that each class member is entitled to a civil penalty up to 1,000 dollars. Up to 1,000, which would satisfy the amount in controversy, right?  If it was the 5,000, because either the interpretation for not to exceed 250 for the first violation or up to 1,000 for either subsequent violation would relate either to each person for the first time they were asked, it would be up to 250, and the next time up to 1,000, or it would be the first violation during the statutory period would be up to 250, and then every subsequent violation after that during the statutory period up to 1,000. If that's the case, it would fall this short of the 5 million if the first violation was up to 250. Now, additional evidence was presented in the motion for reconsideration, but it wasn't newly discovered evidence, and so the court rejected it at that time. With regard to the fact that you were really onto something here and you ring the bell, there were 216,000 people, and you're entitled to $250 a person without the extra $1,000 bump-up. You're looking at a $54 million recovery, isn't that right? Maximum recovery, Your Honor, if it was the $250 analysis. In determining civil penalties, it would be within the court's discretion. But that's in the ballpark. I mean, if you have a good day, that's what you could walk out of here with. If I had the best day. Yeah. I mean, then that's kind of the mountain controversy, isn't it? You don't want to stipulate you're not going to get more than $4,900,000. Right, Your Honor. We did not set forth in the complaint that we were seeking less than $5 million. We certainly did not do that. Now, at the time of filing of the complaint, we did not know the number of credit card transactions at issue. And there is case law that establishes that courts would look to the maximum amount of the civil penalties as a starting point, and then the burden would shift to the defendant to show that it should be less than the statutory maximums. I believe this Court's also found that you can look to statutory maximums in determining amounts in controversy. Are the plaintiffs entitled to that, or is the term civil penalties, does that go to the state, or how does that work? It's to be paid to the cardholder when it's a private action. So when a person paying with a credit card brings the action, in the case of the class action, on behalf of all individuals paying with a credit card, the money is to be paid to the cardholders. The statute also provides for district attorneys or attorney generals to bring the action. And then it would be paid to the state. Correct, Your Honor. Okay. And then the attorney, is there attorney's fees provided for this, too? The statute itself does not establish attorney's fees. However, litigants would be entitled to recover attorney's fees under Section 1021.5 of the California Code of Civil Procedure for enforcing important public policies and establishing benefits on behalf of the general public. And that's the basis for the attorney, prepared for attorney's fees, along with a potential common fund doctrine. Okay. Is there anything else? I don't have anything else to add, Your Honor. This was a sua sponte order, so we have not been fully briefed at the district court stage. So with that, I'll submit. All right. Thank you. Your Honors, thank you. Just two quick points. First, as you just heard from Apelli, the legal theory that they are pursuing is that at a minimum, $250 for the initial transaction during the class period and up to $1,000 for every subsequent. And Apelli was incorrect with respect to the initial notice of removal. We did not plead 5,000 transactions. The evidence was substantially in excess of 5,000. So even based on what was just stated to Your Honors, if there were 5,001, the first one would be $250, and the other 5,000 would satisfy the $5 million jurisdictional amount. And, indeed, the case, the California Supreme Court case Linder that Apelli identified, in that case the California Supreme Court did not specifically find that issue, whether or not it was up to $1,000 for each subsequent. But in DICTA discussing the appellate court decision, it suggested that that was a reasonable interpretation. So while not settled, clearly the amount of controversy is met there. The second, with respect to the statutory penalties and the fact that less could be awarded, the question here is right now what's being claimed, what is the amount in controversy, and that's clearly the full amount. Thank you, gentlemen. Before we say goodbye, normally we would have this case decided within 60 days as required. As you saw, we have an emergency with Judge Fletcher. I'm not sure exactly what's involved. I wonder if you would be in a position to agree we could have an extra 60 days if necessary. Any problem with that? We would certainly stipulate to that, Your Honor. Thank you. Mr. Stoneberger? Yes. Thank you. I appreciate your graciousness in that regard. And we thank you for your argument. The case just argued is submitted, and we'll stand in recess for this session. Thank you. Thank you.
judges: Fletcher, Silverman, Wardlaw